IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MATTHEW D. SODERBERG,

    Plaintiff,

v.                                                    Civ. No. 20-1256 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

    Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 23.* For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the Social Security Agency ("SSA").

### I.    PROCEDURAL HISTORY

Plaintiff filed initial applications for SSDI and SSI on June 26, 2018, alleging disability beginning November 1, 2016. Administrative Record ("AR") at 289, 296. Plaintiff's applications were denied on initial review on April 3, 2019, AR at 210, 214, and again on reconsideration on July 26, 2019, AR at 221, 225. On April 3, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 39–63. The ALJ

issued an unfavorable decision on April 27, 2020.  AR at 13-29.  Plaintiff sought review

from the Appeals Council, which denied review on October 7, 2020, AR at 1, making the

ALJ's denial of the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 416.1481,

422.210(a).

On December 3, 2020, Plaintiff filed suit in this Court, seeking review and

reversal of the ALJ's decision.  *Doc. 1.*  On June 14, 2021, Plaintiff filed the instant

Motion.  *See doc. 23*.  Defendant responded on August 31, 2021.  *See doc. 27*.  Briefing on

Plaintiff's Motion was complete on September 24, 2021, *see doc. 31*, with the filing of

Plaintiff's reply, *see doc. 30*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs*.,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.   ALJ EVALUATION

### A. <u>Legal Standard</u>

For purposes of both SSDI and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. §§ 404.1520(a)(4), 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable … impairment … or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On April 27, 2020, the ALJ issued a decision denying Plaintiff's applications for SSDI and SSI.  *See* AR at 13, 29.  In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since November 1, 2016, the alleged onset date."  AR at 18.  At step two, he found that Plaintiff "has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, valvular heat disease, substance abuse disorder, depression, anxiety, somatic symptoms disorder, and post-traumatic stress disorder (PTSD)."  *Id.*

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or medically equal the severity of Listing 1.04 (disorders of the spine), Listing 4.02 (chronic heart failure), Listing 12.02 (neurocognitive disorders), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), Listing 12.07 (somatic

symptom and related disorders), Listing 12.15 (trauma- and stressor-related disorders),
or any other impairment in the Listings. AR at 19-20; *see also* 20 C.F.R. pt. 404 subpt. P,
app. 1 §§ 12.02, 12.04, 12.06, 12.07, 12.15. When assessing whether Plaintiff's mental
impairments met the Paragraph B criteria for mental disorder Listings, the ALJ found
that Plaintiff has moderate limitations in the four Paragraph B areas: understanding,
remembering, or applying information; interacting with others; concentrating,
persisting, or maintaining pace; and adapting or managing himself. AR at 20-21.

At step four, the ALJ concluded that Plaintiff does not have the RFC to return to
his past employment as a mechanic but does have the RFC to perform light work as
defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to several limitations. AR at
22, 27. Physically, the ALJ found that that Plaintiff can occasionally climb ladders,
ropes, or scaffolds and frequently balance, stoop, kneel, crouch, crawl, and climb ramps
and stairs. AR at 22. Mentally, the ALJ found that Plaintiff can perform simple, routine
tasks and make simple, work-related decisions with normal breaks so long as he
experiences few changes in a routine work setting, only occasionally interacts with
coworkers and supervisors, and has no more than infrequent, superficial interactions
with the public. *Id.* In doing so, the ALJ found Dr. John H. Koewler's opinion about
Plaintiff's mental limitations "limited in its persuasiveness," AR at 24, and explained
that he was "generally persuaded by the assessments of the State agency psychological

consultants," AR at 25.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that he can perform jobs that exist in significant numbers in the national economy.  AR at 27.  Specifically, the ALJ found that that Plaintiff can perform the requirements of three representative unskilled occupations involving light work: (1) housekeeper (Dictionary of Occupational Tables ("DOT") 323.687-014, 850,000 jobs nationally); (2) laundry classifier (DOT 361.687-014, 41,000 jobs nationality); and (3) garment sorter (DOT 222.687-014, 205,000 jobs nationally).  AR at 28.  Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from November 1, 2016, through the date of his decision.  *Id.*

## IV.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred in two ways: (A) failing to either incorporate into Plaintiff's RFC marked mental limitations found by state agency psychological consultants in their medical opinions—which he found generally persuasive—or explain why he did not consider these opinions persuasive as to these limitations, *see doc. 23* at 1, 6-9; and (B) not evaluating Dr. Koewler's opinion "in accordance with the prevailing regulations," *see id.* at 1, 9-16.  Defendant responds that the ALJ's decision should be affirmed since the ALJ incorporated the state agency psychological consultants' marked mental limitations into Plaintiff's RFC, *see doc. 27* at 8-9, the ALJ

applied the appropriate legal standards to evaluating Dr. Koewler's opinions, *see id.* at 4, 12, and the findings that the ALJ made when applying these standards to Dr. Koewler's opinions have substantial evidentiary support, *see id.* at 13-14.

## V.    ANALYSIS

The Court agrees with Defendant.  Remand is unwarranted based on Plaintiff's first argument since the RFC found by the ALJ accounts for all marked limitations opined by the state agency psychological consultants.  Remand is unwarranted based on Plaintiff's second argument because the ALJ assessed Dr. Koewler's opinions under the proper legal standards and substantial evidence exists for the findings he made in that assessment.

### A.  Plaintiff's RFC Reflects the Marked Limitations Found by State Agency Psychological Consultants

The ALJ did not omit any marked limitations found by state agency psychological consultants from Plaintiff's RFC.  On July 31, 2017, Dr. Richard Sorensen, a psychological consultant at the initial adjudication of Plaintiff's previous applications[1] for SSDI and SSI benefits, opined that Plaintiff was only markedly limited in his ability to understand and remember detailed instructions.  AR at 75, 76, 90, 92.  On October 24, 2018, Dr. Ryan Jones, a psychological consultant at the initial adjudication of Plaintiff's

---

[1] These applications were filed on December 13, 2016, and December 15, 2016, with an alleged onset date of October 9, 2016.  *See* AR at 64-65, 79-80.

present applications for SSDI and SSI benefits, opined that Plaintiff had marked

limitations in interacting appropriately with the general public and understanding,

remembering, and carrying out detailed instructions.  AR at 112-14, 133-35.  On July 25,

2019, Dr. Renate Wewerka, a psychological consultant at the reconsideration

adjudication of Plaintiff's present applications, opined that Plaintiff had marked

limitations in his abilities to interact appropriately with the general public and carry out

detailed instructions.  AR at 166-69, 199-201.  The ALJ noted these limitations when

discussing these consultants' opinions.  *See* AR at 25 (observing that the consultants had

found Plaintiff to have "marked limitations in interacting with the public and with

detailed instructions").

　　　The ALJ also incorporated these marked limitations into Plaintiff's RFC by

limiting him to "simple, routine tasks" and "simple, work-related decisions" "with no

more than infrequent, superficial interaction with the public."  *See* AR at 22.  Limiting

Plaintiff to simple, routine tasks and simple, work-related decisions is synonymous

with limiting him to unskilled work.  *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir.

2015) (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)); *Jaramillo v. Colvin*, 576 F.

App'x 870, 875 (10th Cir. 2014) (citing SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985)).  A

limitation to unskilled work does not account for all possible mental limitations.  *See,*

*e.g.*, *Vigil*, 805 F.3d at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir.

2012)); *Jaramillo*, 576 F. App'x at 876.  But it does account for the marked limitations in interacting appropriately with the public and understanding, remembering, and carrying out detailed instructions that Plaintiff contends are absent from his RFC.  *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (holding that unskilled work does not require the ability to "remember detailed instructions, carry out detailed instructions, and interact appropriately with the public").

Plaintiff contends that limiting him to "infrequent, superficial interaction with the public," AR at 22, does not sufficiently incorporate the marked limitation found by Dr. Jones and Dr. Wewerka in his ability to interact appropriately with the general public, *see doc. 23* at 7.  He asserts that a marked limitation "means that [he] cannot interact with the public at all, even occasionally," *see id.* (citing Program Operations Manual System (POMS) DI 24510.063 B.3[2]), and a limitation to "incidental contact with the public is indicative of moderate limitations," *see doc. 30* at 2 (emphasis removed) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and *Bennett v. Berryhill*, No. 1:16-cv-00399-LF, 2017 WL 5612154, at *8 (D.N.M. Nov. 21, 2017)).  Even if Plaintiff's definitions of moderate and marked limitations were correct, though, the RFC accounts for Plaintiff's marked limitation in interacting appropriately with the public by limiting

---

[2] The POMS is "a set of policies issued by [Defendant] to be used in processing claims."  *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).  The Court may defer to them unless they are "arbitrary, capricious, or contrary to law."  *Id.*

him to unskilled work.  *See Nelson*, 655 F. App'x at 629.

But Plaintiff's definitions are incorrect.  The Listings for mental disorders define moderate, marked, and extreme limitations in an area as follows: a moderate limitation is a "fair" ability to function independently, appropriately, effectively, and on a sustained basis in the area; a marked limitation is a "seriously limited" ability to function in the area in that manner; and an extreme limitation is a complete inability to function in the area in that manner.  *See* 20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00(F)(2). Form SSA-4734-F4-SUP—a mental RFC assessment mirroring the assessment completed by Dr. Sorensen, Dr. Jones, and Dr. Wewerka, *compare* POMS DI 24510.060 (requiring a medical consultant to rate twenty mental function items in Section I of Form SSA-4734-F4-SUP and then narrate a mental RFC in Section III), *with* AR at 74-76, 89-92, 112-14, 133-35, 166-69, 198-201 (requiring Dr. Sorensen, Dr. Jones, and Dr. Wewerka to rate twenty mental function items and then explain Plaintiff's mental RFC)—defines a moderate limitation as an "impaired" ability to perform an activity and a marked limitation in an inability to "*usefully* perform or sustain the activity," POMS DI 24510.063 B.2, B3 (emphasis added).

Plaintiff's definition for a marked limitation in interacting with the public—a total bar on public interaction—redefines a marked limitation as an extreme limitation. A seriously limited ability to perform an activity and an inability to usefully perform an

activity are lessor limitations than an inability to perform that activity at all.  An RFC

that limits Plaintiff to "infrequent, superficial interaction with the public," AR at 22,

accounts for the seriously limited ability to interact with the public (or inability to do so

usefully) that Dr. Jones and Dr. Wewerka opined Plaintiff to have.  *See Knight v. Colvin*,

CIV 15-0882 KBM, 2016 WL 9489144, at *6 (D.N.M. Dec. 5, 2016).

Neither *Haga v. Astrue* nor *Bennett v. Berryhill* supports a different result.  In *Haga*,

the Tenth Circuit noted that an ALJ "apparently accepted" a medical source's opinion

that the claimant had a moderate limitation in her ability to "interact appropriately with

the public" by limiting the claimant to "only incidental contact with the public."  *See* 482

F.3d at 1208.  Similarly, in *Bennett*, this Court held that the ALJ "adequately addressed

[the claimant's] moderate limitation in the ability to interact appropriately with the

general public by limiting her RFC to no contact with the public."  *See* 2017 WL 5612154,

at *8 (internal quotation marks omitted).  The conclusion that an RFC limiting a

claimant to incidental or no contact with the public incorporates a moderate limitation

in interaction with the public is distinct from the conclusion that this RFC is

synonymous with that limitation (such that it cannot also incorporate a marked

limitation in interacting with the public).

### B.  The ALJ's Assessment of Dr. Koewler's Opinions was Proper

The ALJ did not err in evaluating the persuasiveness of Dr. Koewler's opinions in

the manner alleged by Plaintiff.  On July 26, 2017, Dr. Koewler conducted a

psychological consultative examination of Plaintiff.  AR at 1417.  Like the state agency

psychological consultants, Dr. Koewler opined that Plaintiff has marked limitations in

his abilities to interact with the public and understand and remember detailed or

complex instructions.  AR at 1419.  Unlike the state consultants, he also opined that

Plaintiff has marked limitations in his abilities to carry out instructions, interact with co-

workers and supervisors, and adapt to changes in the workplace and moderate

limitations in his abilities to understand or remember very short and simple

instructions and work without supervision.  *Id.*  He further opined that Plaintiff has

moderate to marked limitations in his ability to attend and concentrate and may have

marked limitation in his ability to use public transportation.  *Id.*

The ALJ noted most, but not all, of Dr. Koewler's opinions.  He omitted the

marked limitations found by Dr. Koewler in Plaintiff's abilities to carry out instructions

and adapt to changes in the workplace from his restatement of Dr. Koewler's opinions.

*Cf.* AR at 24 (stating that Dr. Koewler only "opined that [Plaintiff] would have moderate

limitations in following short, simple instructions and working without supervision,

and marked limitations in following detailed instructions and with social interaction,

[and] a moderate to marked limitation in concentration, persistence, and pace").  The

ALJ found the opinions of Dr. Koewler that he did note "limited in [their]

persuasiveness." *Id.* He discounted "the marked limitations found by Dr. Koewler" for "appear[ing] to be primarily supported by [Plaintiff's] subjective statements[,] inconsistent with the otherwise unremarkable objective findings recorded by Dr. Koewler[, and] inconsistent with the overall medical evidence, particularly the generally unremarkable objective mental findings throughout the record [in which Plaintiff] generally exhibit[ed] normal concentration and memory." *Id.* He did not discuss his views of the moderate limitations that he noted Dr. Koewler to have found in Plaintiff's ability to "follow[] short, simple instructions and work[] without supervision." *See id.*

Plaintiff attacks only the propriety and the accuracy of the explanation that the ALJ provided for discounting Dr. Koewler's opinions. *See doc. 23* at 9-16. Therefore, he has waived any argument related to the ALJ not discussing the persuasiveness of Dr. Koewler's opinions about Plaintiff's moderate limitations and not mentioning the marked limitations that Dr. Koewler opined Plaintiff to have in carrying out instructions and adapting to changes in the workplace.[3] *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (affirming a district court for deeming that a claimant had

---

[3] The Court expresses no opinion about whether either of these two omissions constitutes legal error. The Tenth Circuit has previously held that not mentioning a medical source's opinion about a marked limitation constitutes legal error. *See Trujillo v. Colvin*, 626 F. App'x 749, 751 (10th Cir. 2015). This ruling, though, predates Social Security Administration regulations disclaiming any requirement to discuss "each medical opinion … from one medical source individually." *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

waived an argument not developed in briefing).

20 C.F.R. §§ 404.1520c and 416.920c provide the analytical framework and articulation requirements for the ALJ's assessment of Dr. Koewler's opinions since Plaintiff applied for SSDI and SSI after March 27, 2017.  Under these regulations, the ALJ assesses multiple opinions from one medical source in a "single analysis" and need not individually articulate "how [he] considered each medical opinion."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In this assessment, the ALJ must consider "five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'"  *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).  The ALJ, though, need only explain his consideration of supportability and consistency, the most important of these factors.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ's explanation for discounting Dr. Koewler's opinions complies with C.F.R. §§ 404.1520c and 416.920c and is supported by substantial evidence.

### 1.  *Supportability*

The ALJ assessed the supportability of Dr. Koewler's opinions by "noting that the marked limitations found by Dr. Koewler appear to be primarily supported by the claimant's subjective statements during the examination and are inconsistent with the

otherwise unremarkable objective findings recorded by Dr. Koewler." *See* AR at 24 (citing AR at 1416-20).  Plaintiff contends this assessment is deficient for two reasons: (i) it rejected Dr. Koewler's opinions for relying only on Plaintiff's subjective statements about his symptoms even though Dr. Koewler made objective findings that support his opinions, *see doc. 23* at 11-13, and "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements," *see id.* at 11 (quoting *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005)); and (ii) the assessment rejected Dr. Koewler's opinions as inconsistent with his unremarkable objective findings despite these findings "fully support[ing] Dr. Koewler's opinion[s]," *see id.* at 12-13.

Starting with the first alleged deficiency, the Court disagrees with Plaintiff's reading of the ALJ's assessment.  The ALJ did not discount Dr. Koewler's opinions for resting solely on Plaintiff's subjective reports.  *See* AR at 24 (observing that the basis for Dr. Koewler's opinions was both his clinical interview with Plaintiff and his mental status examination of Plaintiff).  Reliance on Plaintiff's subjective statements was just one of the reasons articulated by the ALJ for discounting Dr. Koewler's opinions as "limited in [their] persuasiveness"; the other reasons being the opinions' internal inconsistency with the unremarkable objective findings made by Dr. Koewler in his exam and external inconsistency with the generally unremarkable objective mental findings in the record.  *See id.*

16

It was proper for the ALJ to consider Dr. Koewler's reliance on Plaintiff's subjective statements about his symptoms. The supportability factor provides that the persuasiveness of a medical source's opinion is a product of the extent to which the source provides objective (rather than subjective) medical evidence in support of the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be"). Dr. Koewler opined about Plaintiff's marked limitations without explaining why he reached these conclusions. *See* AR at 1419. In the absence of any explanation for these opinions, "noting that the marked limitations found by Dr. Koewler appear to be primarily supported by [Plaintiff's] subjective statements during examination and are inconsistent with the otherwise unremarkable objective findings recorded by Dr. Koewler," as the ALJ did here, *see* AR at 24, is a permissible evaluation of the evidentiary support for Dr. Koewler's opined limitations.

Plaintiff is correct to note that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Doc. 23* at 11 (quoting *Thomas*, 147 F. App'x at 759). *Thomas*, though, only prohibits an ALJ from "reject[ing] [a medical source's] opinion solely for the reason that it was based on [the claimant's] responses" to psychological tests administered by the source, lest the ALJ substitute his

judgment of medical data for that of the source.  *See* 147 F. App'x at 760.  "*Thomas* does

not stand for the proposition that an ALJ cannot, in determining *what weight to assign an*

*opinion*, consider that the opinion is based on subjective information provided by the

claimant."  *Ellvinger v. Saul*, No. 1:19-CV-00385-KRS, 2020 WL 6286359, at *5 (D.N.M.

Oct. 27, 2020) (quoting *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016)).  On

numerous occasions, this Court has found that an ALJ does not contravene *Thomas* by

finding psychological opinions unpersuasive due to their reliance on a claimant's

subjective reports, their lack of support in objective medical evidence, and their

inconsistency with the overall evidentiary record, as the ALJ did here.  *See, e.g., Carrillo*

*v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *3-4 (D.N.M. Oct. 19, 2020); *Cox v.*

*Saul*, CIV 19-1117 KBM, 2020 WL 6701426, at *5-6 (D.N.M. Sep. 9, 2020).  Therefore, the

ALJ did not run afoul of *Thomas* here by noting that the primary support for the marked

limitations found by Dr. Koewler was Plaintiff's subjective statements.

Turing to the second alleged deficiency, the Court finds that the ALJ did not err

by concluding that "the marked limitations found by Dr. Koewler … are inconsistent

with the otherwise unremarkable objective findings recorded by Dr. Koewler."  *See* AR

at 24.  As noted earlier, a moderate limitation is a fairly limited ability to function

independently, appropriately, effectively on a sustained basis in an area, while a

marked limitation is a severely limited ability to function in that manner in that area

such that an individual is unable to usefully do so.  Substantial evidence exists for the

ALJ's conclusion that the objective findings noted by Dr. Koewler during his mental

status examination[4] of Plaintiff (and summarized by the ALJ in his decision, *see* AR at

23) are inconsistent with his opinions that Plaintiff has severely limited abilities in

following detailed instructions and social interaction, and a fairly to severely limited

ability in concentration, persistence, and pace.

Relevant to Plaintiff's ability to follow detailed instructions, Dr. Koewler

observed that, even though Plaintiff had "below average" recall, he could compute

serial sevens and simple arithmetic and he had immediate and delayed recall of three

out of three items.  AR at 1419.  He also noted that, despite Plaintiff's cognitive

inefficiency worsening due to recent illness, Plaintiff had adequate insight and

common-sense reasoning ability, average intellectual ability, and normal knowledge of

general information.  *Id.*  The observations that Plaintiff has cognitive inefficiency and

below average recall are evidence that Plaintiff may have a restricted ability to deal with

detailed instructions.  But Plaintiff's performance on other cognitive tests and the

observed adequacy of his insight, reasoning, intellect, and knowledge suggest that the

restriction is not severe.  Therefore, it was not unreasonable for the ALJ to conclude that

---

[4] "Mental status examinations … document a clinician's observations of the patient at a particular point in time and cover a variety of categories, including appearance, emotions, thoughts, cognition, judgment, and insight."  *McGehee v. Saul*, Civ. No. 18-1164 KK, 2019 WL 6219507, at *6 (D.N.M. Nov. 21, 2019).

the marked limitation in following detailed instructions opined by Dr. Koewler was

inconsistent with his observations about Plaintiff's mental ability on the whole.

Dr. Koewler's opinions about Plaintiff's other marked limitations require more

elucidation before the Court evaluates the reasonableness of the ALJ's conclusion that

they are inconsistent with Dr. Koewler's objective findings.  A marked limitation in

social interaction amounts to severely limited "abilities to relate to and work with

supervisors, co-workers, and the public."  *See* 20 C.F.R. pt. 404 subpt. P, app. 1 §

12.00(E)(2).  Illustrative examples of abilities falling within this limitation include:

> cooperating with others; asking for help when needed; handling conflicts
> with others; stating own point of view; initiating or sustaining
> conversation; understanding and responding to social cues (physical,
> verbal, emotional); responding to requests, suggestions, criticism,
> correction, and challenges; and keeping social interactions free of
> excessive irritability, sensitivity, argumentativeness, or suspiciousness.

*Id*.  Relevant to Plaintiff's ability to perform these abilities, Dr. Koewler observed that,

while Plaintiff was slightly tense and had slightly pressured speech, a depressed and

anxious mood, and unspecified bipolar type two features, he also had normal verbal

articulation and an expressive affect; was logical, coherent, and cooperative; could

provide basic information; and had no thought disorder.  *See* AR 1418-19.  The observed

tenseness, pressured speech, depressed and anxious mood, and bipolar type two

features are consistent with a limited ability to interact with others.  However, the

observations that Plaintiff had an expressive affect and normal verbal articulation and

was cooperative, logical and coherent in speech, and able to communicate basic

information cut against the opinion that Plaintiff's ability to interact with others is so

limited that he cannot usefully do so. Therefore, it was reasonable for the ALJ to

conclude that, as a whole, these observations are inconsistent with a marked limitation

in social interaction.

As for the opined moderate to marked limitation in attendance and

concentration, this is an opinion that Plaintiff's "abilities to focus attention on work

activities and stay on task at a sustained rate," *see* 20 C.F.R. pt. 404 subpt. P, app. 1 §

12.00(E)(3), are fairly to severely limited. Illustrative examples of these abilities include:

> Initiating and performing a task that [the claimant] understand[s] and
> know[s] how to do; working at an appropriate and consistent pace;
> completing tasks in a timely manner; ignoring or avoiding distractions
> while working; changing activities or work settings without being
> disruptive; working close to or with others without interrupting or
> distracting them; sustaining an ordinary routine and regular attendance at
> work; and working a full day without needing more than the allotted
> number or length of rest periods during the day.

*Id.* Relevant to these abilities, Dr. Koewler observed during his examination that

Plaintiff "probably has chronic attention deficit hyperactivity disorder" and has

reduced stamina and worsened cognitive inefficiency, but otherwise observed that

Plaintiff "was serious and alert," "fully oriented," and "on time for [his] appointment";

and had adequate insight and common-sense reasoning. AR at 1418-19. The

indications that Plaintiff has reduced stamina and may have chronic attention deficit

hyperactivity disorder are evidence of a reduced capacity for attendance and concentration.  But the observations that Plaintiff was on time for his appointment; was serious, alert, and fully oriented during that appointment; and exhibited adequate insight and common sense suggest that this reduction is not severe.  Therefore, it was not unreasonable for the ALJ to conclude that Dr. Koewler's objective findings, when considered as a whole, are inconsistent with his opined moderate to marked limitation in concentration, persistence, and pace.

### 2.   *Consistency*

The ALJ assessed the consistency of Dr. Koewler's opinions by concluding that Dr. Koewler's "findings are inconsistent with the overall medical evidence, particularly the generally unremarkable objective mental findings through the record, with [Plaintiff] generally exhibiting normal concentration and memory."  *See* AR at 24 (citing AR at 1404-1415, 1801, 1817-24, 1893, 2290, 2314, 2321, 2798).  Plaintiff contends this assessment is deficient in three ways: (i) the ALJ failed to acknowledge records that are consistent with Dr. Koewler's opinions, *see doc. 23* at 15-16; (ii) the records that the ALJ cites as inconsistent with Dr. Koewler's opinions do not support this conclusion and lack probative value, *see id.* at 15; and (iii) the assessment's reliance on selected benign objective findings violates agency regulations that direct the ALJ to consider a wider swath of medical evidence when evaluating mental health and fails to account for the

natures of mental impairments not lending themselves to objective findings, *see id.* at 13-14.

Starting with the first alleged deficiency, the ALJ did not ignore evidence in the record that is consistent with Dr. Koewler's opined marked limitations.  Plaintiff points the Court to several psychiatric examinations in which he exhibited anxiety, anhedonia, an abnormal, depressed, or forgetful mood, and an abnormal or constricted affect.  *See doc. 23* at 15 (citing AR at 1811, 1884, 2313, 2321, 2966).  But the ALJ did not ignore evidence of Plaintiff's anxiety, anhedonia, or abnormal mood and effect; he expressly acknowledged this evidence when concluding three paragraphs before his assessment of Dr. Koewler's opinions that "[p]sychiatric examinations in the record are … generally normal, with occasional observations [of] abnormal mood, anhedonia, and of agitation and anxiousness during medical examinations," AR at 24 (citing, *inter alia*, AR at 895, 901, 1303, 1306, 1313, 1333, 1356, 1389, 1907, 2289, 2313, 2321, 2336, 2371, 2798, 2803, 2909, 2914).[5]  Then, he found Dr. Koewler's opinions inconsistent with these "generally unremarkable" examinations.  *See* AR at 24.  The ALJ may not have discussed the exact psychiatric examinations that Plaintiff cites, but he was not required to do so, as they were duplicative of examinations that he did discuss.  *See Clifton*, 79 F.3d at 1009–10.

---

[5] The Court has admitted the ALJ's citation to 5F/255 since Exhibit 5F does not have 255 pages.

Turing to Plaintiff's second argument, the examination notes that the ALJ cited support the proposition for which they are cited: Dr. Koewler's opinions "are inconsistent with the *overall* medical evidence, particularly the *generally* unremarkable objective findings throughout the record [in which Plaintiff] *generally* exhibit[ed] normal concentration and memory," *see* AR at 24 (emphasis added) (citing AR at 1404-1415, 1801, 1817-24, 1893, 2290, 2314, 2321, 2798).  Each note states that Plaintiff exhibited normal attention span and concentration, *see* AR at 1410, 1801, 1820, 1893, 2289-90, 2313-14, 2321, a finding that is inconsistent with the moderate to marked limitation that Dr. Koewler opined Plaintiff to have in attention and concentration.  A few notes record that Plaintiff exhibited conditions—such as agitation, anhedonia, a constricted affect, and/or a congruent or depressed mood and affect—that are consistent with this limitation and the opined marked limitation in social interaction.  *See* AR at 1801, 1819, 2313, 2321.  Most examination notes, though, record that Plaintiff was not anhedonic, *see* AR at 1801, 1892-93, 2313-14, 2798, was alert, *see* AR at 1410, 1820, 2289, had normal mood, *see* AR at 1410, 1820, 1892-93, 2289-90, 2798, and had appropriate affect, *see* AR at 1801, 1892-93, 2289-90, 2798, findings that are inconsistent with the opined limitations. Therefore, substantial evidence exists for the characterization that examination notes are generally unremarkable and the conclusion that Dr. Koewler's opinions were inconsistent with them.

Plaintiff also disputes these examination notes' probative value as they are from office visits about his physical (rather than mental) conditions and from physical exams (rather than mental status exams).  *See doc. 23* at 15.  Plaintiff, though, has waived this sub-argument by not citing any authority for the proposition that observations about a claimant's mental status made during a physical exam or a medical appointment for a physical condition have limited probative value.  *See Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) ("A party's failure to cite any authority 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" (quoting *Rapid Transit Lines, Inc., v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970))).

As for Plaintiff's final arguments, the Court disagrees that the ALJ's reliance on the benign results of mental status exams was inappropriate and did not account for the possibility that Plaintiff's mental impairments may wax and wane.  These results are objective evidence for Plaintiff's disability (or lack thereof) since a mental status exam is a "medically acceptable clinical diagnostic technique."  *See* 20 C.F.R. §§ 404.1502(f)-(g), 416.902(f)-(g).  This Court and ALJs routinely consider these results when assessing whether a mental impairment rises to the level of a disability (under the SSA's definition of the term).  *See, e.g.*, *Sherman v. Kijakazi*, No. 1:20-CV-00887-KRS, 2021 WL 5505525, at *7 (D.N.M. Nov. 24, 2021); *Ellvinger*, 2020 WL 6286359, at * 7; *Carrillo*, 2020

25

WL 6136160, at *4.

Plaintiff is correct to note that the ALJ must consider all the evidence—not just the results of objective mental examinations—when assessing the consistency of a medical source's opinions with the record. *See* 20 C.F.R. §§ 404.1520c, 416.920c (requiring the ALJ to assess the consistency of a source's medical opinions "with the evidence from other medical sources and nonmedical sources"); 20 C.F.R. § 404.1545(a)(3) (requiring the ALJ to base the RFC "on all of the relevant medical and other evidence). However, there is no indication that the ALJ did not do so here. The ALJ found Dr. Koewler's opinions "inconsistent with the *overall* medical evidence," not just the results of certain mental examinations. *See* AR at 24 (emphasis added). As the ALJ acknowledged elsewhere in his decision, this evidence includes not only these results, *see id.* (citing AR at 1404-1415, 1801, 1817-24, 1893, 2290, 2314, 2321, 2798), but also other probative evidence such as Plaintiff's noncompliance with treatment and failure to "follow[] through with either psychotherapy or with recommendations for substance abuse treatment, *see id.* (citing, *inter alia*, AR at 2315, 2750).

The ALJ also carefully considered all the evidence. *See* AR 17. Admittingly, the ALJ's statement to this effect is boilerplate language, which courts have rejected in other contexts. *See, e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (holding that boilerplate language about credibility factors was insufficient to support an ALJ's

credibility determination).  But Plaintiff does not direct the Court to any probative evidence that the ALJ failed to consider.  Absent this direction, the Court "take[s] the ALJ at his word."  *See Wall*, 561 F.3d at 1070 (cleaned up).

As for possible fluctuation in Plaintiff's symptoms, "Plaintiff is correct that mental impairments often wax and wane and that a claimant need not show that the impairment is continuously disabling in order to succeed in [his] claim of disability." *See Roberts-Jewett v. Astrue*, Civil Action No. 11-1066-JWL, 2012 WL 1388733, at *4 (D. Kan. Apr. 20, 2012) (citing *Freemeyer v. Sullivan*, 723 F. Supp. 1417, 1420 (D. Kan. 1989)). The ALJ, though, did not ignore evidence of oscillating severity in Plaintiff's symptoms. As noted earlier, he acknowledged that Plaintiff was occasionally observed to have "abnormal mood, anhedonia, and … agitation and anxiousness during medical examinations" before concluding that the record as whole contained generally normal examinations.  *See* AR at 24.  This analysis discharged the ALJ's obligation to account for swings in the severity of Plaintiff's impairments, *see K.S. v. Saul*, Case No. 20-1253-JWB, 2021 WL 2338250, at *5 (D. Kan. June 8, 2021), and its conclusion is supported by substantial evidence, *see* AR at 1404-1415, 1801, 1817-24, 1892-93, 2289-90, 2313-14, 2321, 2798.

## VI.   CONCLUSION

For the foregoing reasons, the Court finds that the ALJ did not commit

reversible error.  Therefore, the Court DENIES Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision (*doc. 23*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**